UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RODNEY T. PETERSON,

    Plaintiff,

v.                                  Case No. 2:19-cv-566-FtM-29NPM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of a denial of Social Security benefits. The Commissioner filed the Transcript of the proceedings (referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum (Doc. 18). As discussed in this report, the decision of the Commissioner should be affirmed.

**I.    Social Security Act Eligibility and the ALJ Decision**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.[1] The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy.[2]

---

[1] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[2] *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905

B.     **Procedural History**

On October 20, 2015, Plaintiff filed an application for supplemental security income. (Tr., pp. 127, 233-39). Plaintiff asserted an onset date of December 28, 2013. (*Id.*, p. 233). Plaintiff's application was denied initially on January 20, 2016, and upon reconsideration on July 6, 2016. (*Id.*, pp. 127, 145).

Administrative Law Judge William G. Reamon ("ALJ") held a brief hearing on November 16, 2017, continuing the case to allow time to obtain a neuropsychological examination from Dr. Lopez, and then held a subsequent hearing on May 17, 2018. (*Id.*, pp. 56-108). The ALJ issued an unfavorable decision on August 1, 2018, finding Plaintiff not disabled since October 20, 2015, the date the application was filed. (*Id.*, pp. 10-33).

On June 17, 2019, the Appeals Council denied Plaintiff's request for review. (*Id.*, pp. 1-6). Plaintiff then filed a Complaint (Doc. 1) with this Court on August 9, 2019, and the case is ripe for review.

C.     **Summary of the ALJ's Decision**

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020) (citing 20 C.F.R. § 416.920(a)(1)). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

---

- 416.911.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)–(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant has the burden of production and persuasion throughout the process. *Id.* at 1359; *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the

existence of a disability as defined by the Social Security Act unquestionably rests with the claimant."); 20 C.F.R. § 404.1512 (providing that the claimant must prove disability).

At step one of the evaluation in this matter, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 20, 2015, the application date. (Tr., p. 12). At step two, the ALJ characterized Plaintiff's severe impairments as: "left shoulder rotator cuff tear status post surgery; right foot plantar fasciitis; neurocognitive disorder; borderline intellectual functioning; and learning disorder." (*Id.*). At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairments. 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. (*Id.*, p. 15).

As a predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) except he can perform no more than frequent forward reaching with the left upper extremity, and no overhead reaching with the left upper extremity. The claimant can only frequently, as opposed to constantly, stoop; only occasionally balance, kneel, crawl, and climb ramps or stairs; and never crouch or climb ladders, ropes, or scaffolds. The claimant must also avoid concentrated exposure to extreme cold, wetness, vibration, and workplace hazards, including dangerous moving machinery and unprotected heights. Additionally, the claimant is limited to performing simple, routine, repetitive tasks that do not involve reading over the fourth grade level. The claimant can have no more than occasional interaction with supervisors, coworkers, and the general public. The claimant can also tolerate no more than occasional work setting or process adjustments.

(*Id.*, p. 19). Consequently, the ALJ found Plaintiff unable to perform his past relevant work as a construction worker. (*Id.*, pp. 29-30).

Finally, at step five, the ALJ found Plaintiff could perform jobs that existed in significant numbers in the national economy. (*Id.*, p. 30). In support, the vocational expert identified the following representative occupations an individual with Plaintiff's age, education, work experience and RFC could perform:

(1) marker, DOT 209.587-034, light, SVP 2, reasoning level 2;

(2) cleaner, DOT 323.687-014, light, SVP 2, reasoning level 1; and,

(3) advertising distributor, DOT 230.687-010, light, SVP 2, reasoning level 1.

(*Id.*, p. 31).[3] Thus, the ALJ concluded Plaintiff "has not been under a disability within the meaning of the Social Security Act since October 20, 2015, the date the application was filed." (*Id.*, p. 1).

## II.  Analysis

Plaintiff's appeal presents the following issues:

(1)  whether the ALJ failed to resolve any apparent inconsistencies between the vocational expert's testimony and the DOT;

(2)  whether the ALJ properly accounted for Plaintiff's math and language limitations; and

(3)  whether the ALJ properly found Plaintiff has a "limited education."

---

[3] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

### A. Standard of Review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds "the evidence preponderates against" the agency's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### B. Whether the ALJ Failed to Resolve any Apparent Inconsistencies Between the Vocational Expert's Testimony and the DOT

Plaintiff argues the vocational expert's testimony was inconsistent with the DOT regarding the requirements associated with the representational jobs, and that the ALJ failed to resolve these apparent inconsistencies. (*Id.*, pp. 7-13). Plaintiff argues the DOT's classification of jobs within the marker position as requiring a reasoning level of 2 (DOT 209.587-034, 1991 WL 671802) causes this occupation to fall outside of the ALJ's RFC

limitation of performing "simple, routine, repetitive tasks." (*Id.*, pp. 10-12; Tr., p. 19). Plaintiff also argues the DOT's classification of jobs within the cleaner occupation as requiring occasional crouching conflicts with Plaintiff's RFC limitation of never crouching. (Doc. 18, p. 12; Tr., p. 19). And as for the advertising distributor occupation, Plaintiff contends that the DOT's classification of these jobs as requiring constant exposure to weather conflicts with Plaintiff's RFC limitation to "avoid concentrated exposure to extreme cold [or] wetness." (Doc. 18, pp. 12-13; Tr., p. 19).

"[T]he ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). An ALJ must ask the vocational expert to identify and explain any conflict between his or her testimony and the DOT. *Id.* at 1363. Moreover, whenever a conflict is apparent, the ALJ is required to ask the vocational expert about it. *Id.* An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* at 1365. "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363. This is an independent obligation of the hearing examiner. *Id.*

While at first blush one might suspect there is a conflict between an RFC limitation to avoid concentrated exposure to cold or wetness and the DOT's classification of advertising distributor as requiring constant exposure to weather, a review of the DOT's

occupational definition reveals that "extreme cold," "wet and/or humid," and "exposure to weather" are three separate characteristics among many (such as noise, vibration, radiation, electric shock, and others), and that the DOT classifies both extreme cold and wetness as conditions that do not exist for jobs within this occupation. DOT 230.687-010, 1991 WL 672162. This conveys that cold or wet conditions refer to something other than weather-related conditions, and so there is no conflict between the DOT and the RFC concerning this occupation.

As for the purported conflict between an RFC limitation to simple, routine, repetitive tasks, and the DOT's description of jobs within the occupation of marker as having a Level 2 reasoning classification—which means the jobs entail applying common sense to carry out detailed but uninvolved instructions, and dealing with a few concrete variables in standardized situations—the Eleventh Circuit has examined this contention and found no conflict. *See Valdez v. Comm'r of Soc. Sec.*, — F. App'x —, No. 19-13052, 2020 WL 1951406, *3 (Apr. 23, 2020) (jobs with a DOT Level 2 reasoning are not inconsistent with an RFC limitation to simple, routine, and repetitive work); *see also Lawrence v. Saul*, 941 F.3d 140, 144 n.8 (4th Cir. 2019) (joining "every other circuit to consider the issue" and finding no apparent conflict between "simple, routine, repetitive" and Level 2 reasoning).

Finally, while the Commissioner essentially concedes that the RFC's "never crouching" limitation and the DOT's "occasional crouching" requirement for jobs within the cleaner occupation presented an apparent conflict that was left unresolved (Doc. 18, p. 14 n. 2), any failure to resolve this apparent inconsistency between the vocational expert and the DOT is harmless because there is no apparent and unresolved conflict concerning the other representational occupations identified by the expert. *Wooten v.*

*Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) (holding that even if there had been an inconsistency between the vocational expert's testimony and the DOT, the ALJ's error was harmless when the vocational expert identified other jobs existed in significant numbers in the national economy Plaintiff could perform).

      **C.    Whether the ALJ Properly Accounted for Plaintiff's Math and Language Limitations**

Plaintiff argues the ALJ's RFC and hypothetical posed to the vocational expert did not account for his math and language limitations, and that as a result of these purported missteps, the ALJ's finding at step five is erroneously based on representative occupations that Plaintiff cannot perform. (Doc. 18, pp. 20-22). In support, Plaintiff relies on a psychological evaluation conducted on November 17, 2017 by Mabel Lopez, Ph.D. (Doc. 18, pp. 20-21), which indicated grade equivalent of less than kindergarten for spelling and mathematics, but also indicated grade equivalent of 6.5 for word reading, 4.6 for sentence comprehension, and 4.6 for a reading composite score. (Tr., p. 879).

The ALJ reviewed Dr. Lopez's psychological evaluation and brief neuropsychological screening, and the ALJ summarized Dr. Lopez's findings including Plaintiff's composite reading score at the fourth-grade level, and spelling and math skills at less than kindergarten level. (*Id.*, p. 24). In fact, in the RFC assessment, the ALJ included the following limitation: "simple, routine, repetitive tasks that do not involve reading over the fourth grade level." (*Id.*, p. 19). And in the hypothetical to the vocational expert, the ALJ asked if an individual was limited to no reading over a fourth-grade level and no on-the-job math requirements (along with other limitations not relevant here), would jobs exist in the national economy that would allow for these limitations. (*Id.*, pp. 100-101). The board-certified vocational expert with more than thirty years of experience

- 9 -

in the field (Id., p. 32), testified to three representative occupations: cleaner, marker and advertising-material distributor. (*Id.*, p. 101). For these occupations, the vocational expert testified that, in accordance with the DOT, the math level is the lowest one possible, and—based on his education, training and experience—math outside of simple counting was not required. (*Id.*, pp. 102-104).

"The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012); *see also Curcio v. Comm'r of Social Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise."). But for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). Here, the ALJ asked the vocational expert if there were jobs in the national economy without math requirements that Plaintiff could perform given his age, work experience and RFC. And based on his expertise and experience, the vocational expert identified the representative occupations of marker and advertising distributor in support of his opinion that a significant number of such jobs were available. Consequently, any error from not including a math limitation in the RFC was harmless, and the ALJ's finding that Plaintiff could adjust to other work despite any math limitation was supported by substantial evidence, because the vocational expert's analysis accounted for it.

This leaves the issue of whether the ALJ erred by not including a spelling limitation in either the RFC or the hypothetical posed to the vocational expert. In determining a claimant's RFC, the ALJ must consider all the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). In short, an individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). An ALJ is not required to include limitations in either the RFC or the hypothetical posed to the vocational expert that are not supported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). And in the end, Plaintiff must demonstrate that he cannot adjust to other jobs sufficiently available in the economy, because ultimately, "the claimant bears the burden of proving that he is disabled." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

In light of the overall record, the omission of a spelling limitation to the less than kindergarten level does not render either the RFC or the vocational expert's testimony unsupported by substantial evidence. Indeed, that indication was contradicted by the finding that Plaintiff could read at a fourth-grade level, his obtaining an IQ score of 93 when in the fifth grade, and his attending school through at least the tenth grade. (Tr., p. 20). And as the ALJ summarized, "the record is replete with observations from [Plaintiff's] treating and examining providers noting … average apparent intellect" (*Id.*, p. 25). Further, because it was consistent with the medical evidence and the record as a whole, the ALJ appropriately gave great weight to the psychological consultant's conclusion that Plaintiff retained the capacity "to meet the mental demands of a simple vocation on a sustained

basis." (*Id.*, p. 26). On balance, a spelling limitation to less than kindergarten level appears unsupported by the record.

Even if a spelling limitation should have been included in either the RFC or the hypothetical posed to the vocational expert, any error was harmless and the ALJ's step-five determination remains supported by substantial evidence for two reasons. First, the job descriptions for the representative occupations identified by the vocational expert do not suggest that any particular level of spelling ability is required. For instance, the advertising distributor jobs do not entail drafting or composing any advertising material, but only distributing material prepared by others. DOT 230.687-010, 1991 WL 672162. And markers generally attach price tickets to articles of merchandise. DOT 209.587-034, 1991 WL 671802. Second, Plaintiff has not demonstrated that any spelling limitation would somehow reduce the number of jobs otherwise available to him in these or similar occupations to something less than a significant number. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (finding that if at step five, the Commissioner meets the burden of showing jobs exist in significant numbers in the national economy, "the burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [Commissioner]." (citation omitted)).

### D.   Whether the ALJ Properly Found Plaintiff Has a "Limited Education"

Plaintiff argues the ALJ erred in finding at step five that Plaintiff has a "limited education." (Doc 18, p. 28). Plaintiff claims based on Dr. Lopez's findings, Plaintiff may be illiterate or functionally illiterate and, therefore, unable to perform the listed jobs (*Id.*, p. 29).[4] The Commissioner argues Plaintiff completed the 10th grade (and was not in

---

[4] Without citing any authority, Plaintiff takes issue with the ALJ not stating the weight

special education classes), which equates to a limited education. (*Id.*, p. 30). The Commissioner also argues the ALJ included in the RFC assessment that Plaintiff is limited to performing jobs that do not involve reading over the fourth-grade level, showing the ALJ accounted for Dr. Lopez's findings. (*Id.*, p. 31).

In the decision, the ALJ found Plaintiff had a limited education, completing the 10th grade. (Tr., pp. 30, 66). The regulations generally consider the 7th through 11th grade level of formal education to be a "limited education." 20 C.F.R. § 1564(b)(3). But the numerical grade alone may not be sufficient to determine an individual's educational abilities depending on the evidence presented. 20 C.F.R. § 1564(b). Plaintiff argues the ALJ erred in finding Plaintiff had a limited education and should have found Plaintiff illiterate or functionally illiterate. (Doc. 18, pp. 28-29). Plaintiff relies on Dr. Lopez's finding Plaintiff has a 6.5 grade equivalent for word reading, 4.6 grade equivalent for sentence comprehension, less than a kindergarten equivalent for spelling and math, and a 4.6 grade equivalent for a composite reading score. (*Id.*).

Under the regulations, "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally,

---

given to Dr. Lopez's opinions. (Doc. 18, p. 29). The ALJ reviewed Dr. López's report, and even included Dr. López's finding as to Plaintiff's reading level in the RFC. (Tr., pp. 19, 24). To the extent the ALJ erred in not explicitly stating the weight given to Dr. López's opinion, Plaintiff fails to show any such error affected the judge's ultimate decision. Therefore, any error the ALJ made in not explicitly stating the weight assigned to Dr. López's opinion was harmless and not reversible. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that the administrative law judge erred by failing to state with particularity the weight assigned to [certain doctors'] medical opinions, the error is harmless because it did not affect the administrative law judge's ultimate determination.").

an illiterate person has had little or no formal schooling." 20 C.F.R. § 1564(b)(1). But the evidence from Dr. Lopez shows Plaintiff can read at a 4th grade level and the ALJ included this limitation in the RFC assessment and in the hypothetical to the vocational expert. (Tr., p. 19). Therefore, the vocational expert took Plaintiff's reading level in account when identifying representative jobs. (*Id.*, p. 100). And as discussed above, the vocational expert took Plaintiff's math abilities into account as well.

Further, Plaintiff admits he can read and understand English and write more than his name in English. (*Id.*, p. 247). He also reported engaging in several activities that demonstrate his capacity to read, write, follow instructions and perform basic math calculations, including driving, riding a motorcycle, preparing meals and doing laundry. (*Id.*, p. 16). Finally, even if the ALJ erred in finding Plaintiff has a "limited education," this error is harmless because Plaintiff did not prove that he is unable to perform jobs within the representative occupations of marker and advertising distributor. *See Green*, 223 F. App'x at 923. Consequently, the ALJ's determination that Plaintiff can adjust to adequately prevalent jobs in the national economy is supported by substantial evidence.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

It is **RESPECTFULLY RECOMMENDED** the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in Defendant's favor.

Respectfully recommended in Chambers in Fort Myers, Florida on September 25, 2020.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.