```
                 UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION

RODNEY T. PETERSON,

        Plaintiff,

v.                                  Case No:  2:19-cv-566-FtM-29NPM

COMMISSIONER   OF   SOCIAL
SECURITY,

        Defendant.
_____
```

**OPINION AND ORDER**

This matter is before the Court on consideration of Magistrate Judge Nicholas P. Mizell's Report and Recommendation (Doc. #19), filed on September 25, 2020, recommending that the Decision of the Commissioner be affirmed. Plaintiff filed Objections to the United States Magistrate Judge's Report and Recommendation (Doc. #20) on October 9, 2020, and a Notice of Correction (Doc. #22) on November 13, 2020. The Commissioner filed a Response (Doc. #21) on October 23, 2020. For the reasons set forth below, the objections are overruled and the Decision of the Commissioner is affirmed.

**I.**

The Court adopts and incorporates in full the portions of the Report and Recommendation discussing eligibility under the Social Security Act, the procedural history of the case, the summary of

the Administrative Law Judge's (ALJ) Decision, the outline of the issues, and the discussion of the standards of review. (Doc. #19, pp. 1-6.)

At Step Four of the familiar five-step evaluation process, the ALJ determines a claimant's "residual functional capacity" (RFC). RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [his] impairments." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Here, the ALJ found that plaintiff had the RFC to perform "light work", but with thirteen (13) restrictions:

> claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) except he can perform no more than frequent forward reaching with the left upper extremity, and no overhead reaching with the left upper extremity. The claimant can only frequently, as opposed to constantly, stoop; only occasionally balance, kneel, crawl, and climb ramps or stairs; and never crouch or climb ladders, ropes, or scaffolds. The claimant must also avoid concentrated exposure to extreme cold, wetness, vibration, and workplace hazards, including dangerous moving machinery and unprotected heights. Additionally, the claimant is limited to performing simple, routine, repetitive tasks that do not involve reading over the fourth grade level. The claimant can have no more than occasional interaction with supervisors, coworkers, and the general public. The claimant can also tolerate no more than occasional work setting or process adjustments.

(Tr. 19). With this RFC, the ALJ determined plaintiff could not perform his "past relevant work," and therefore proceeded to Step Five.

At Step Five, the burden of going forward shifts to the Commissioner to show that significant numbers of other jobs exist in the national economy which the claimant can perform given his RFC. To make this showing, the Commissioner may take judicial notice of jobs data from certain sources, including the Department of Labor's Dictionary of Occupational Titles (DOT), or may use the services of a vocational expert or other specialist, or both.[1] Sometimes, there is an apparent conflict between the DOT and the testimony of a vocational expert. When this occurs, there is "an affirmative duty on the ALJs to identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1365 (11th Cir. 2018).

Here, the ALJ relied upon the testimony of a vocational expert and the DOT at Step Five of the sequential evaluation. The ALJ found that three jobs existed in significant numbers in the national economy which plaintiff could perform - marker, cleaner,

---

[1] Although not relevant here, in some cases the Commissioner may also rely on the Medical Vocational Guidelines.

and advertising distributor. The ALJ therefore determined plaintiff was not under a disability as of the pertinent date. In due course, this became the final Decision of the Commissioner.

## II.

Plaintiff raised three grounds for reversal of the Commissioner's Decision, each relating either to the RFC determination or the failure to comply with Washington. The Magistrate Judge ruled against plaintiff on each claim of error, and recommended that the decision of the Commissioner be affirmed. Plaintiff filed specific objections as to each ruling and the recommendation, and therefore the district court reviews the issues *de novo*. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

**A. Failure to Resolve Conflicts Between DOT and VE**

Plaintiff argues that there were apparent conflicts between the testimony of the vocational expert and the DOT requirements for each of the three jobs the ALJ concluded plaintiff could perform. Despite these apparent conflicts, plaintiff asserts, the ALJ failed to fulfill the affirmative obligations imposed by Washington, 906 F.3d at 1365, and therefore the Commissioner's

Decision is not supported by substantial evidence. The Court addresses each job.

**(1) Cleaner, Housekeeper**

The DOT's classification of the relevant "cleaner, housekeeper" job, DOT 323.687-014, provides that "crouching" is "occasionally" required. (Tr. 409.) But "never crouch" was one of the RFC restrictions determined by the ALJ. (Tr. 19.) Plaintiff asserts there was a conflict between the DOT's "occasional" crouching requirement and the vocational expert's testimony that plaintiff could work as a cleaner despite an RFC restriction that he could "never crouch." This apparent conflict required the ALJ to comply with the Washington obligations, which was not done.

There was certainly an inconsistency between the DOT requirement and the vocational expert's testimony, and the ALJ did not address or resolve this inconsistency. The Magistrate Judge found, however, that

> any failure to resolve this apparent inconsistency between the vocational expert and the DOT is harmless because there is no apparent and unresolved conflict concerning the other representational occupations identified by the expert. Wooten v. Comm'r of Soc. Sec., 787 F. App'x 671, 674 (11th Cir. 2019) (holding that even if there had been an inconsistency between the vocational expert's testimony and the DOT, the ALJ's error was harmless when the vocational expert identified

>      other jobs existed in significant numbers in
>      the national economy Plaintiff could perform)

(Doc. #19, pp. 8-9.)  The Commissioner's Response does not assert that cleaner is a job which plaintiff can perform, relying only on marker and advertising distributer.  (Doc. #21, p. 4.)  The Eleventh Circuit has previously applied the harmless-error doctrine in social security disability cases.  Zoslow v. Comm'r of Soc. Sec., 778 F. App'x 762, 764 (11th Cir. 2019) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)).  The harmless error finding is only accurate, however, if there was no reversible error as to the marker and advertising distributer jobs.  For the reasons set forth below, the Court finds no such errors.  Therefore, the Court determines that the failure to resolve the apparent conflict as to the cleaner job was harmless error.  Plaintiff's objection is overruled.

    **(2)  Marker**

The DOT's classification of the "marker" job, DOT 209.587-034, requires a reasoning level of 2.  A GED reasoning level of two requires the ability to "[a]pply commonsense understanding, to carry out detailed but uninvolved written [or] oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." (Tr. 386.) The RFC determined by the ALJ limited plaintiff to performing "simple, routine, repetitive

- 6 -

tasks." (Tr. 19.) Plaintiff asserts that a reasoning level of 2 requires more than the ability to perform "simple, routine, repetitive tasks," resulting in conflict between the DOT and the vocational expert's testimony that plaintiff could work as a marker. As a result, plaintiff argues, this conflict required the ALJ to fulfill the Washington obligations, which was not done.

The Magistrate Judge found there was no conflict between reasoning level 2 and performing "simple, routine, repetitive tasks," and therefore the Washington obligations were not triggered.

> As for the purported conflict between an RFC limitation to simple, routine, repetitive tasks, and the DOT's description of jobs within the occupation of marker as having a Level 2 reasoning classification—which means the jobs entail applying common sense to carry out detailed but uninvolved instructions, and dealing with a few concrete variables in standardized situations—the Eleventh Circuit has examined this contention and found no conflict. See Valdez v. Comm'r of Soc. Sec., — F. App'x —, No. 19-13052, 2020 WL 1951406, *3 (Apr. 23, 2020) (jobs with a DOT Level 2 reasoning are not inconsistent with an RFC limitation to simple, routine, and repetitive work); see also Lawrence v. Saul, 941 F.3d 140, 144 n.8 (4th Cir. 2019) (joining "every other circuit to consider the issue" and finding no apparent conflict between "simple, routine, repetitive" and Level 2 reasoning).

(Doc. #19, p. 8.)

Plaintiff argues that Valdez was simply *dicta*, and that the more recent Albra v. Acting Comm'r of Soc. Sec., 825 F. App'x 704, 708 (11th Cir. 2020) supports the existence of an apparent conflict. The Commissioner responds that Valdez was not *dicta*, citing a Middle District of Florida opinion finding it to be a holding, and that Albra is "unavailing." (Doc. #21, p. 4.) Both Valdez and Albra are unpublished Eleventh Circuit opinions. Unpublished opinions are not controlling authority, and are persuasive only insofar as their legal analysis warrants. United States v. Rodriquez-Lopez, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004).

An "apparent conflict" is one "that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." Washington, 906 F.3d at 1365. "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." Id. "The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." Id. at 1362. In the absence of binding authority, the Court finds Lawrence and the cases cited therein to be persuasive. There were no "apparent conflict" between a GED Reasoning Level of 2 and the ability to

perform "simple, routine, and repetitive tasks." Therefore, the Court overrules plaintiff's objection.

### (3) Advertising Distributor

The DOT's definition of an advertising material distributor is one who "[d]istributes advertising material, such as merchandise samples, handbills, and coupons, from house to house, to business establishments, or to persons on the street, following oral instructions, street maps, or address lists." DOT 230.687-010; Tr. 421. Plaintiff argues that this constant exposure to weather is inconsistent with the RFC's limitation to "avoid concentrated exposure to extreme cold [or] wetness." (Tr. 19.) This conflict, plaintiff argues, required the ALJ to comply with the Washington obligations, which was not done.

The Magistrate Judge found no apparent conflict, stating

> a review of the DOT's occupational definition reveals that "extreme cold," "wet and/or humid," and "exposure to weather" are three separate characteristics among many (such as noise, vibration, radiation, electric shock, and others), and that the DOT classifies both extreme cold and wetness as conditions that do not exist for jobs within this occupation. DOT 230.687-010, 1991 WL 672162. This conveys that cold or wet conditions refer to something other than weather-related conditions, and so there is no conflict between the DOT and the RFC concerning this occupation.

(Doc. #19, pp. 7-8.)

While an advertising material distributor by definition has constant exposure to weather, such exposure is not apparently inconsistent with the RFC limitation to "avoid concentrated exposure to extreme cold [or] wetness." DOT 230.687.010 specifically states that the job does not involve extreme heat, wet and/or humid conditions, vibration, or atmospheric conditions. (Tr. 424.) The vocational expert did not disagree. The ALJ's hypothetical question included avoiding concentrated exposures to extremes of cold, wetness, vibration, and hazards, and the vocational expert included advertising material distributor as such a job. (Doc. #14-3, Tr. 100-01.) The Court finds there is no conflict between the DOT requirements and the testimony of the vocational expert, and therefore plaintiff's objection is overruled.

### B. Lack of Spelling Ability As RFC Component

Plaintiff asserts that the ALJ erred by not including a less-than-kindergarten-equivalent spelling limitation in the RFC determination and the hypothetical questions posed to the vocational expert. Based on this omission, plaintiff asserts that the ALJ's RFC and Step Five determinations are not supported by substantial evidence. (Doc. #20, pp. 4-5.)

The Magistrate Judge stated:

In light of the overall record, the omission of a spelling limitation to the less than kindergarten level does not render either the RFC or the vocational expert's testimony unsupported by substantial evidence. Indeed, that indication was contradicted by the finding that Plaintiff could read at a fourth-grade level, his obtaining an IQ score of 93 when in the fifth grade, and his attending school through at least the tenth grade. (Tr., p. 20). And as the ALJ summarized, "the record is replete with observations from [Plaintiff's] treating and examining providers noting . . . average apparent intellect" (Id., p. 25). Further, because it was consistent with the medical evidence and the record as a whole, the ALJ appropriately gave great weight to the psychological consultant's conclusion that Plaintiff retained the capacity "to meet the mental demands of a simple vocation on a sustained basis." (Id., p. 26). On balance, a spelling limitation to less than kindergarten level appears unsupported by the record.

Even if a spelling limitation should have been included in either the RFC or the hypothetical posed to the vocational expert, any error was harmless and the ALJ's step-five determination remains supported by substantial evidence for two reasons. First, the job descriptions for the representative occupations identified by the vocational expert do not suggest that any particular level of spelling ability is required. For instance, the advertising distributor jobs do not entail drafting or composing any advertising material, but only distributing material prepared by others. DOT 230.687-010, 1991 WL 672162. And markers generally attach price tickets to articles of merchandise. DOT 209.587-034, 1991 WL 671802. Second, Plaintiff has not demonstrated that any spelling limitation would somehow reduce the number of jobs otherwise available to him in these or similar occupations to something

> less than a significant number. See Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1359 (11th Cir. 2018) (finding that if at step five, the Commissioner meets the burden of showing jobs exist in significant numbers in the national economy, "the burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [Commissioner]." (citation omitted)).

(Doc. #19, pp. 11-12.)

Plaintiff relies on the November 2017 report of clinical psychologist Mabel Lopez, Ph.D., which reported a less than kindergarten level for spelling and math.[2] Plaintiff asserts that this required the ALJ to include a spelling limitation in the RFC and the questions to the vocational expert.

While there is record-evidence which could support such a limitation, the issue is whether there is substantial evidence to support the ALJ's failure to include the spelling limitation in the RFC determination and the hypothetical questions to the vocational expert. The issue is not whether there is some evidence which would support such a spelling limitation, but whether there was substantial evidence supporting the ALJ's determination to omit such a limitation. The Court does not reweigh the evidence or substitute its own judgment for that of the Commissioner "If the Commissioner's decision is supported by substantial evidence

---

[2] Plaintiff has not filed an objection to the Magistrate Judge's treatment of the math level.

we must affirm, even if the proof preponderates against it." <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996).

The Court agrees with the Magistrate Judge that there was substantial evidence to support the failure to include a spelling limitation in the RFC and the questions to the vocational expert. Additionally, the Court agrees that even if such a limitation was required, its omission in this case was harmless error. Therefore, plaintiff's objection is overruled.

### C.  "Limited" Education or Functionally Illiterate?

Plaintiff argues that the ALJ's finding that plaintiff has a "limited" education is not supported by substantial evidence. Plaintiff asserts that an ability to spell at less than a Kindergarten level suggests that plaintiff is functionally illiterate. (Doc. #20, pp. 5-6.)

The Magistrate Judge summarized plaintiff's argument as follows:

> Plaintiff argues the ALJ erred in finding Plaintiff had a limited education and should have found Plaintiff illiterate or functionally illiterate. (Doc. 18, pp. 28-29). Plaintiff relies on Dr. Lopez's finding Plaintiff has a 6.5 grade equivalent for word reading, 4.6 grade equivalent for sentence comprehension, less than a kindergarten equivalent for spelling and math, and a 4.6 grade equivalent for a composite reading score. (<u>Id.</u>).

(Doc. #19, p. 13.)  The Magistrate Judge then correctly set forth the regulatory definition of illiteracy:

> Under the regulations, "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 1564(b)(1).

(Doc. #19, pp. 13-14.)

In evaluating a claimant's education, formal schooling or training is the primary factor, but the ALJ may also consider past work experience and responsibilities, daily activities, and hobbies. 20 C.F.R. §§ 404.1564(a), 416.964(a). "The term education also includes how well [the claimant] is able to communicate in English." Thomas v. Comm'r of Soc. Sec., 497 F. App'x 916, 918 (11th Cir. 2012) (citing Id. at §§ 404.1564(b), 416.964(b)). A claimant who is determined to have a "limited education" has "ability in reasoning, arithmetic, and language skills, but not enough to . . . do most of the more complex job duties needed in semi-skilled or skilled jobs." Id. at §§ 404.1564(b)(3), 416.964(b)(3).

The Magistrate Judge concluded that there was substantial evidence supporting the ALJ's limited education finding.  The evidence showed plaintiff can read at the 4th grade level; can read

and understand English and write more than his name in English; and engaged "in several activities that demonstrate his capacity to read, write, follow instructions and perform basic math calculations, including driving, riding a motorcycle, preparing meals and doing laundry." (Doc. #19, p. 14.) The ALJ also considered plaintiff's full-scale IQ score of 63 in November 2017, and the prior IQ of 93; that plaintiff left school after completing the Tenth Grade with mostly D and F grades; that plaintiff reported significant challenges and limitations in reading and writing (id., Tr. 19-20); the consultative examination by Dr. Kasprzak as to plaintiff's intellectual ability in the intellectual disorder range (id., Tr. 23); and the evaluation of Dr. Lopez (id., Tr. 24). The Court concludes there was substantial evidence to support the finding of a limited education. Therefore, Plaintiff's objection is overruled.

Accordingly, it is now

**ORDERED:**

1.  The Report and Recommendation (Doc. #19) is **accepted and adopted** by the Court as set forth above.

2.  Plaintiff's Objections (Doc. #20) are **OVERRULED**.

3.  The Decision of the Commissioner of Social Security is **affirmed**.

4.  The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___16th___ day of November, 2020.

*[signature: John E. Steele]*
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Nicholas P. Mizell
U.S. Magistrate Judge

Counsel of Record